**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| NURBEK OKESHOV,<br>Petitioner,<br>v.<br>ERNESTO SANTACRUZ JR., et al.,<br>Respondents. | Case No. EDCV 26-6187-AS<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

On October 19, 2026, Nurbek Okeshov (A# 220-043-717) ("Petitioner"), an immigration detainee in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, who is represented by counsel, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") seeking release on the grounds that his detention since August 4, 2026, violates due process. (Dkt. No. 1). The Petition was accompanied by a Motion for Temporary Restraining Order ("TRO") and a declaration of Petitioner's counsel ("Asfandyar Decl.") with exhibits. (Dkt. No. 3). On October 27,

2026, Respondents filed an Answer to the Petition, arguing that Petitioner is lawfully detained under 8 U.S.C. § 1226(a) and that he did not exhaust administrative remedies by requesting a bond hearing before an immigration judge. (Dkt. No. 10). Petitioner filed a Reply on October 30, 2026. (Dkt. No. 11).

For the reasons stated below, the Court grants the Petition, orders Petitioner's immediate release from detention, among other relief, and denies the TRO Motion as moot.[1]

**BACKGROUND**

Petitioner is a citizen of Kyrgyzstan who was admitted to the United States as a student on December 29, 2019. (Petition ¶¶ 2, 34). On March 30, 2021, Petitioner applied for asylum with the United States Citizenship and Immigration Services ("USCIS"). (Id. ¶ 35). Shortly thereafter, USCIS issued a written Acknowledgment of Receipt stating that Petitioner's application "was received and is pending as of [March 30, 2021]" and Petitioner "may remain in the U.S. until his asylum application is decided." (Asfandyar Decl. ¶ 6, Ex. C). On May 13, 2021, Petitioner gave biometrics for the asylum application. (See Asfandyar Decl. ¶ 7, Ex. F at 8). USCIS then granted Petitioner employment authorization, and the asylum application remained pending. (See Petition ¶ 35; Asfandyar Decl. ¶¶ 8-9). Petitioner has no criminal record. (Petition ¶ 38).

---

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 4-6, 8).

On August 4, 2026, Petitioner appeared for a scheduled appointment at the USCIS Application Support Center in Los Angeles. (Petition ¶¶ 3, 39). Petitioner had learned of the appointment through a referral from a USCIS officer. (Petition ¶¶ 3, 39; Answer Ex. 2 at 2). The government's Form I-213 states that Petitioner was scheduled that day "for an interview related to his pending Application for Asylum and Withholding of Removal, Form I-589 with USCIS." (Answer Ex. 2 at 2). Shortly after arriving, however, Petitioner was arrested by ICE officers and transported to the ICE office, where the officers served him with a Notice to Appear charging him as removable under section 237(a)(1)(C)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(C)(i), as a noncitizen who failed to maintain the nonimmigrant status under which he was admitted. (Petition ¶ 40; Answer Ex. 1; id. Ex. 2 at 2-3).

**DISCUSSION**

For the reasons explained below, Petitioner is entitled to release from custody because his detention without prior notice and a hearing violates due process.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S.

678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." (citation omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025) (quoting Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."), appeal dismissed, 2021 WL 1590193 (9th Cir. 2021).

The parties dispute whether Petitioner has a constitutionally protected liberty interest. Petitioner asserts that he does, and that he has been denied due process of law because he was taken into custody without prior notice and a hearing. (Petition at 2, 6-7, 9-10; Reply at 3-4). Respondents disagree, arguing that as ICE had not previously detained Petitioner, "he has not gained a vested liberty interest," and his due process claim fails. (Answer at 1-2). That is, while courts in this district and elsewhere have held that a noncitizen's release from immigration custody gives "rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government,'"

Martinez v. Noem, 821 F. Supp. 3d 1183, 1190 (C.D. Cal. 2026) (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)); Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 878 (C.D. Cal. 2026); see also M.R. v. Chestnut, 827 F. Supp. 3d 1348, 1355 (E.D. Cal. 2026) ("Petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest."); Chavarriaga Rojas v. Albarran, 826 F. Supp. 3d 1155, 1165 (N.D. Cal. 2025) ("Courts in this district consistently hold that when a noncitizen is released pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody."), in Respondents' view, it is only those noncitizens whom the government has previously detained and then released into the United States who have acquired a liberty interest in their freedom from detention.

The Court disagrees with Respondents' argument.[2] Contrary to Respondents' contention, "[j]udges throughout the Ninth Circuit

---

[2] As Judge Breyer recently noted in addressing a similar argument:

> [T]he government's reasoning has troubling implications when stripped down to its essentials: under their framework, a person's interest in being free would depend on the government first depriving them of that freedom. . . . That cannot be right. . . . While this Court does not doubt that the decision to release an immigrant from custody can create a liberty interest, it strains credulity to imagine that this is the only route to such an interest. An interest in liberty that could only be bestowed by the government would provide little comfort to those seeking protection from its abuses.

Chaparro Ayala v. Albarran, 2026 WL 2722780, *4 (N.D. Cal. 2026) (emphasis in original).

have repeatedly held . . . 'that a noncitizen who has lived at liberty for an extended duration while his immigration case proceeds — pursuant to the Government's affirmative decision not to detain him — holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process." Ruiz Tellez v. United States Gen. Att'y, 2026 WL 2654571, at *2 (E.D. Cal. Sept. 9, 2026) (quoting Norberto C.M. v. Warden, Central Valley Annex, 2026 WL 1992747, at *4 (E.D. Cal. July 9, 2026)); see also Cao v. Johnson, 2026 WL 2751379, at *1 (C.D. Cal. Sept. 16, 2026) ("'[F]or constitutional purposes, there should be no material difference between an alien released from detention by immigration authorities and an alien whom immigration authorities previously chose not to detain.' The Court finds persuasive a decision . . . which found the distinction 'specious' for constitutional purposes." (citing Kharitonova v. Albarran, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026))); Zhou v. Janec[k]a, 2026 WL 2365550, at *5 (C.D. Cal. Aug. 14, 2026) ("Courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them."); Abdeltawab v. Armant, 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026) ("Th[e] principle [that a noncitizen has a protected liberty interest in remaining out of custody] extends to those like Petitioner who have never been in immigration custody in the first place due to years of deliberate acquiescence by Respondents."); Chaparro Ayala v. Albarran, 2026 WL 2722780, at *3 (N.D. Cal. Sept. 15, 2026) ("When the government makes 'a decision

not to detain [someone] in the first place,' that decision can create 'the same liberty interest in [that person's] continued freedom as an individual initially detained.'" (quoting Kharitonova, 2026 WL 531441, at *2)).

Here, Petitioner arrived in the United States on December 29, 2019, applied for asylum on March 30, 2021, and was informed he could remain in the United States until his asylum application was decided, which has not yet occurred. Petitioner also received employment authorization, has no criminal record, and resided in the United States for over six years before ICE detained him at a scheduled interview appointment with USCIS. Accordingly, "[a]lthough the government did not detain and then release [Petitioner], it made a decision not to detain [him] in the first place; Petitioner thus has the same liberty interest in [his] continued freedom as an individual initially detained." Kharitonova, 2026 WL 531441, at *2; Zhou, 2026 WL 2365550, at *5; Abdeltawab, 2026 WL 1045564, at *2; see also Yao v. Janec[k]a, 2026 WL 2666861, at *4 (C.D. Cal. Sept. 10, 2026) ("Here, the Court finds that Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for her re-detention, based on the government's decision not to detain her or otherwise impede her liberty while exercising authority over her for purposes of adjudicating her application for immigration relief."); Khushvaktov v. Santacruz, 2026 WL 2491407, at *3 (C.D. Cal. Aug. 24, 2026) (petitioner who entered the United States on a nonimmigrant student visa, filed an application for asylum that remained pending, and was authorized

for employment "developed a substantial liberty interest in remaining out of custody based on the length of time he lived in the United States and the ties he built to the community over the past nearly 6 years"); Troykalo v. Armant, 2026 WL 2602910, at *4 (C.D. Cal. Sept. 2, 2026) ("Respondents 'deliberate[ly] acquiesce[d]' to Petitioner's continued freedom by, among other things, affirmatively granting him employment authorization while his application was pending." (citation omitted)); Gagik T. v. Chestnut, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) ("Petitioner was lawfully admitted in 2020. He filed a timely application for asylum that USCIS has accepted and that remains pending. Although his initial permission to enter the United States expired, the government chose to grant him employment authorization. It then chose to renew it — and, indeed, it remains valid through 2030. By concluding that there was no need to detain Petitioner after his . . . visa had expired, and instead sanctioning his continued presence in the United States by granting and renewing his employment authorization, the government vested in Petitioner a liberty interest in his continued freedom." (citation omitted)).

Because Petitioner therefore has a protected liberty interest in remaining out of custody, the Court applies the following three-part test established in Mathews v. Eldridge, 424 U.S. 319 (1976), to determine whether the government's procedures were constitutionally sufficient:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335.

As to the first factor, "Petitioner has a vested liberty interest in remaining free from detention as he has lived for the last almost seven years." Abdeltawab, 2026 WL 1045564, at *2; Kharitonova, 2026 WL 531441, at *2; see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) ("As to the first [Mathews] factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.' That is beyond dispute." (citation omitted)); Meneses, 811 F. Supp. 3d at 1163 ("Petitioner has a substantial private interest in remaining in his home, providing for his family, and participating in the community, all out of custody."); Yao, 2026 WL 2666861, at *5 ("Petitioner has a substantial interest in remaining in the community and pursuing her application for immigration relief."); Troykalo, 2026 WL 2602910, at *4 ("Petitioner has a substantial private interest in remaining out of immigration custody. After Petitioner lawfully

entered the United States in 2016 and filed his asylum application in 2017, Respondents 'made a decision not to detain [him]' during the pendency of his application. Hence, for nearly nine years, Respondents, with 'full knowledge of Petitioner's identity, immigration status[,] and location during the pendency of [his] immigration application[] . . . continuously elected not to detain [him] while exercising authority over [his] legal proceedings." This decision to allow Petitioner to live freely in the community gave rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government.'" (citations omitted)). Accordingly, the first Mathews factor favors Petitioner.

As to the second factor, it is undisputed that, despite his protected liberty interest, Petitioner was detained without notice and a pre-detention hearing. Under these circumstances, there is a high risk of erroneous deprivation of liberty. See Martinez, 821 F. Supp. 3d at 1191 ("[T]he risk of erroneous deprivation is significant without a pre-detention hearing."); Meneses, 811 F. Supp. 3d at 1164 ("There is an unacceptably high risk that the government would erroneously deprive Petitioner of his liberty interest absent a pre-detention hearing."); Pinchi, 792 F. Supp. 3d at 1035 ("[I]t is clear that there is a significant risk that the government will erroneously deprive Ms. Garro of that liberty interest if it does not provide her with a pre-detention hearing. Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor Ms. Garro

Pinchi has had an opportunity to determine whether there is any valid basis for her detention.”); Yao, 2026 WL 2666861, at *5 (“[T]here is a significant risk that the government will erroneously deprive Petitioner of [her] liberty interest if it does not provide her with pre-deprivation process.”); Troykalo, 2026 WL 2602910, at *5 (“Where, as here, a petitioner has not received a hearing or other process prior to the revocation of her liberty, the risk of an erroneous deprivation of liberty is high.” (citations omitted)); Tzoc v. LaRose, 2026 WL 2227161, at *4 (S.D. Cal. Aug. 3, 2026) (“Where the Government detains a noncitizen after years of government-authorized liberty without first providing notice or an opportunity to be heard before a neutral decisionmaker, courts have consistently concluded that the risk of erroneous deprivation is high and that a pre-deprivation hearing would significantly reduce that risk.”); Gagik T., 2026 WL 1837413, at *4 (“The risk of erroneous deprivation from seizing a long-present, work-authorized asylum applicant with no criminal history, without any prior opportunity to be heard, is substantial, and the value of a pre-deprivation hearing in reducing that risk is correspondingly high.”); Torres Ferrera v. Scott, 2026 WL 776145, at *5 (W.D. Wash. Mar. 19, 2026) (“Where a person with a protected liberty interest is provided no process at all to contest its deprivation, due process cannot be satisfied. Put differently, no process can never equal due process. The risk of erroneous deprivation will always be unacceptably high where no process is provided. . . .”); G.S. v. Hermosillo, 2026 WL 179962, at *3 (W.D. Wash. Jan. 22, 2026) (“the absence of pre-deprivation procedures

created an unacceptably high risk of erroneous deprivation”). Therefore, the second Mathews factor favors Petitioner.

“Third, courts have routinely recognized that the Government’s interest in detaining individuals like Petitioner without a hearing is ‘low.’” Abdeltawab, 2026 WL 1045564, at *3 (citations and emphasis omitted); see also Troykalo, 2026 WL 2602910, at *5 (“Respondents’ interest in detaining Petitioner and the burden of a pre-detention hearing are both minimal.”); Pinchi, 792 F. Supp. 3d at 1036 (“[T]here is no countervailing government interest — the third and final Mathews factor — that supports conducting a bond hearing only after Ms. Garro Pinchi has been detained, rather than in advance thereof.”); Chaparro Ayala, 2026 WL 2722780, at *6 (same). And that is particularly so when, as here, “the government has not articulated any legitimate interest in support of detaining Petitioner without a pre-detention hearing.”[3] Kharitonova, 2026 WL 531441, at *3; Zhou, 2026 WL 2365550, at *6; Yao, 2026 WL 2666861, at *5; see also Chaparro Ayala, 2026 WL 2722780, at *6 (“Respondents’ present no explanation for why their ‘interests [in detaining Petitioner] must be satisfied immediately,’ far be it one that outweighs the risk of an ongoing and erroneous deprivation of constitutional rights.” (quoting E.A. T.-B v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025))). Indeed, “[t]he efficiency

[3] “[D]etention for its own sake is not a legitimate governmental interest.” Claros v. Albarran, 811 F. Supp. 3d 1062, 1070 (N.D. Cal. 2025); see also Pinchi, 792 F. Supp. 3d at 1036 (“Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.”).

burden entailed by a bond hearing would be minimal. As other courts have observed, bond hearings require little expenditure of resources." Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025); see also Martinez, 821 F. Supp. 3d at 1192 ("[C]ustody hearings in immigration court are 'routine' and impose only a 'minimal' cost." (citations omitted)); Pinchi, 792 F. Supp. 3d at 1036 ("Nor can the government suggest that the cost of providing [a pre-deprivation hearing] would be fiscally or administratively onerous. If the government wishes to detain Ms. Garro Pinchi, it need only provide a hearing before a neutral decisionmaker. 'In immigration court, custody hearings are routine and impose a minimal cost.'" (citation omitted)); Chaparro Ayala, 2026 WL 2722780 at *6 ("[T]he fiscal and administrative burdens of a pre-deprivation hearing are insignificant."). Thus, the third Mathews factor favors Petitioner.

Therefore, applying the Mathews factors, Petitioner was denied due process of law when he was detained without notice and a pre-detention hearing. See Zinermon v. Burch, 494 U.S. 113, 127 (1990) (Applying Mathews, "the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant

[liberty or] property interest.'" (citations and italics omitted)); Khushvaktov, 2026 WL 2491407, at *4 ("Petitioner's arrest on August 4, 2026, without prior notice or a pre-deprivation hearing violated Petitioner's procedural due process rights."); Zhou, 2026 WL 2365550, at *6 ("Because each of the Mathews factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention — which was accompanied by no process — violates the Due Process Clause."); Yao, 2026 WL 2666861, at *6 (same); Ordonez v. Mullin, 2026 WL 1630411, at *4 (C.D. Cal. June 3, 2026) (same); Tzoc, 2026 WL 2227161, at *5 ("Balancing the Mathews factors, the Court concludes that due process required Respondents to provide Petitioner with notice and an opportunity to be heard before depriving him of his liberty. Petitioner had a substantial liberty interest in remaining free from physical detention after years of government-authorized liberty; the procedures employed created a significant risk of erroneous deprivation; and Respondents have identified no governmental interest sufficient to justify dispensing with pre-deprivation process. For those reasons, the Court concludes that Respondents violated Petitioner's procedural due process rights under the Fifth Amendment by detaining him without constitutionally adequate pre-deprivation process."). And "[b]ecause Petitioner's deprivation of liberty without due process has been unlawful from its inception, her immediate release is required." Torres Ferrera, 2026 WL 776145, at *6; Tzoc, 2026 WL 2227161, at *5; see also Martinez, 821 F. Supp. 3d at 1196 ("Petitioner's release from custody is the appropriate remedy" since among other things, "Petitioner continues to suffer irreparable harm so long as she remains unlawfully

[]detained”); Kositsin v. Santacruz, 2026 WL 2866467, at *4 (C.D. Cal. Sept. 23, 2026) (“Petitioner has a strong interest in remaining free from confinement, there is a significant risk that Respondents’ lack of constitutionally adequate procedures has resulted in his unnecessary detention, and any government interest in refusing to provide such process is minimal. The Court therefore concludes that Petitioner’s detention without adequate pre-deprivation process violated due process” and he is entitled to be released from custody); Orozco-Salazar v. Warden Desert View Facility, Adelanto ICE Processing Ctr., 2026 WL 2497334, at *3 (C.D. Cal. Aug. 25, 2026) (“Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner’s due process rights.”); Khushvaktov, 2026 WL 2491407, at *4 (“Given th[e] violation of Petitioner’s due process rights, the Court concludes that ‘Petitioner’s release is necessary to return him to the status quo.’” (citation omitted)); Ordonez, 2026 WL 1630411, at *4 (“As has been found in countless similar cases in this Circuit, the appropriate remedy . . . is to order Petitioners placed in the position they would have been absent the due process violation — that is, they should be released from custody on the conditions that were initially imposed.”); Juan v. Noem, 2026 WL 607714, at *3 (W.D. Wash. Mar. 4, 2026) (“The appropriate remedy for the violation of Petitioner’s constitutional rights is release.”).

**ORDER**

Accordingly, the Court GRANTS the Petition (Dkt. No. 1) and ORDERS Respondents to release Petitioner Nurbek Okeshov (A# 220-043-717) immediately from immigration detention without the imposition of any restraints on his liberty, such as reporting requirements, GPS, or electronic monitoring. Respondents are also enjoined from re-detaining Petitioner absent strict compliance with the requirements of due process and all applicable statutes and regulations. Further, Respondents shall file a "Notice of Release" within three days of the date of this Order. Petitioner's TRO Motion (Dk.t No. 3) is DENIED AS MOOT.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 3, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE